Gretchen M. Nelson (Bar No. 112566)
*gnelson@kreindler.com*
KREINDLER & KREINDLER, LLP
707 Wilshire Blvd., Suite 5070
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

David Woodward (Bar No. 68073)
*dwoodward@heinsmills.com*
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

**Attorneys for Class Plaintiffs**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In Re BROADCOM CORP. SECURITIES LITIGATION<br><br>This Document Relates to ALL ACTIONS. | Master File No. SACV 01-275 DT (MLGx)<br><br>(Consolidated Cases)<br><br><u>CLASS ACTION</u><br><br>**FOURTH QUARTERLY STATUS REPORT AND RECOMMENDATION FOR CY PRES AWARD** |

## I. INTRODUCTION

Lead Counsel, Heins Mills & Olson, P.L.C., respectfully submits this quarterly status report and joint recommendation of Lead Counsel and the settlement administrator, Gilardi & Co. LLC ("Gilardi"), that the remaining settlement funds be awarded cy pres to one or more appropriate non-profit organizations. After three distributions to the Class members, only about $9,372.00 of settlement funds are expected to remain from the $150 million settlement reached in this securities fraud class action. Given this small residual balance, Lead Counsel and Gilardi agree that another distribution to the Class members is not economically practicable and that a cy pres award comporting with the governing legal standards discussed below is appropriate.

## II. RELEVANT PROCEDURAL HISTORY

### A. The Court's Final Distribution Order and First Residual Distribution.

On June 3, 2011, the Court entered an Order Directing Final Distribution of Net Settlement Fund (the "Final Distribution Order") [#742]. The Final Distribution Order directed a distribution of the remaining balance of the Net Settlement Fund (the "First Residual Distribution") proportionally to all members of the Class who cashed their initial settlement distribution check and whose share of the second distribution was at least $10.00. Final Distribution Order ¶ 4. The Court further ordered Lead Counsel to consult with Gilardi after completion of the First Residual Distribution and to evaluate whether the remaining balance of the Net Settlement Fund was sufficient to make a second residual distribution to Class members economically practicable.

Based on that evaluation, the Court ordered that Lead Counsel would submit to the Court a report (1) attaching a current fund analysis showing the balance of the Net Settlement Fund remaining after the First Residual Distribution, (2) offering Lead Counsel's recommendation as to whether a second distribution should be made to the

1  Class or the balance should be distributed cy pres to the recipients chosen by the
2  Court, (3) explaining the basis for its recommendation, and (4) requesting the Court's
3  approval of the proposed action. *Id.* ¶ 6.
4        The Final Distribution Order goes on to provide that after receiving Lead
5  Counsel's report, the Court would consider Lead Counsel's recommendation, direct
6  Lead Counsel to provide whatever additional information, if any, the Court might
7  wish to consider in deciding how the residual funds should be distributed, and advise
8  Lead Counsel whether to file a formal motion. *Id.* ¶ 7. Based on these submissions,
9  the Court would direct Lead Counsel either to conduct a second residual distribution
10 to Class members or to distribute the residual funds cy pres to one or more nonprofit
11 organizations designated by the Court. *Id.* ¶ 8.
12       **B.    The Second Residual Distribution**
13       On January 26, 2012, following the First Residual Distribution, Lead Counsel
14 submitted a Second Quarterly Status Report and Recommendation for Second
15 Residual Distribution to Class Members [#744] and joined with Gilardi in
16 recommending that the Court authorize a second distribution of residual settlement
17 funds to eligible Class Members (the "Second Residual Distribution").
18       On January 30, 2012, the Court issued an Order Directing Second Residual
19 Distribution of Net Settlement Fund (the "Second Residual Distribution Order")
20 [#745]. The Second Residual Distribution Order directed that the balance of the Net
21 Settlement again be distributed proportionally to all Class members who cashed their
22 initial distribution check and whose share of the second residual distribution would be
23 at least $10.00. As it did in its Final Distribution Order, the Court directed Lead
24 Counsel to consult with Gilardi following the Second Residual Distribution and to
25 recommend to the Court whether any remaining settlement funds should be distributed
26 to eligible Class members or, alternatively, awarded cy pres to an appropriate non-
27 profit organization. Second Residual Distribution Order ¶ 6.
28

1  The Order further provided that after receiving Lead Counsel's
2  recommendation, the Court would again consider Lead Counsel's recommendation,
3  direct Lead Counsel to provide whatever additional information, if any, the Court
4  might wish to consider in deciding how the residual funds should be distributed, and
5  advise Lead Counsel whether to file a formal motion. *Id.* ¶ 7. Based on Lead
6  Counsel's submissions and any additional information the Court might request, the
7  Court would direct Lead Counsel either to conduct a third residual distribution to
8  Class members or to distribute the residual funds cy pres to one or more nonprofit
9  organizations designated by the Court. *Id.* ¶ 8.

10 On April 3, 2012, Lead Counsel submitted its Third Quarterly Status Report
11 [#748], which informed the Court of the progress of the Second Residual Distribution
12 and reported that the balance of the Net Settlement Fund was $25,703.29 as of March
13 31, 2012.

14 **III. <u>RECOMMENDATION FOR CY PRES AWARD</u>**

15 In its Second Quarterly Status Report and Recommendation for Second
16 Residual Distribution to Class Members [#744], Lead Counsel advised that it would
17 likely recommend a cy pres award following the Second Residual Distribution, given
18 the modest balance of the Net Settlement Fund at that time. The even smaller balance
19 as of March 31, 2012 reinforced this expectation.

20 As described in the accompanying Declaration of Bruce H. Cozzi, Gilardi's
21 Fund Controller, the balance of the Net Settlement Fund after completion of the
22 Second Residual Distribution, which is imminent, is expected to be approximately
23 $9,372.00. Cozzi Decl. ¶ 8. Gilardi believes that this remaining balance is not
24 sufficient to make a third residual distribution to Class members economically
25 practicable. *Id.* After consulting with Gilardi about the cost of yet another distribution
26 to the Class members, Lead Counsel concurs in Gilardi's recommendation. We
27 believe that the Court should now invoke the doctrine of cy pres and order payment of
28

4

any remaining settlement funds to one or more nonprofit organizations having interests that align with those of the Class.

The Ninth Circuit approved the use of cy pres (an ellipsis of the French phrase *cy pres comme possible*, meaning "as nearly as possible") to distribute residual class settlement funds in *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). Recognizing that unclaimed settlement funds typically remain in class actions, the court stated that cy pres distribution, or fluid recovery, facilitates "distribution of unclaimed funds to indirectly benefit the entire class." *Id.* at 1305 (citing *Developments in the Law - Class Actions*, 89 HARV. L. REV. 1318, 1517 (1976)). While approving cy pres as a distribution method for residual class settlement funds, however, the court reversed as an abuse of discretion the district court's application of cy pres because it "benefits a group far too remote from the plaintiff class." *Id.* at 1308. The court cautioned that the use of cy pres "will be rejected when the proposed distribution fails to provide the 'next best' distribution." *Id.* (citing *City of Phila. v. Am. Oil Co.*, 53 F.R.D. 45, 72 (D.N.J. 1971)).

The Ninth Circuit recently revisited cy pres, reaffirming its approval of the doctrine but once more cautioning that the "next best" requirement is not to be ignored:

> The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. The *cy pres* distributions here do not comport with our *cy pres* standards. While the donations were made on behalf of a nationwide plaintiff class, they were distributed to geographically isolated and substantively unrelated charities.

1  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (citing *Six (6) Mexican
2  Workers*, 904 F.2d at 1307-08).
3        In reversing the district court's award in *Nachshin*, the Ninth Circuit observed
4  that "[s]ome courts appear to have abandoned the 'next best use' principle implicit in
5  the *cy pres* doctrine," instead making "*cy pres* distributions to myriad charities which,
6  though no doubt pursuing virtuous goals, have little or nothing to do with the purposes
7  of the underlying lawsuit or the class of plaintiffs involved." *Id.* at 1038-39 (citing *In
8  re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392, 1396–99 (N.D. Ga.
9  2001) (distributing $1.85 million remaining from a price fixing class action settlement
10 relating to merchandise sold at professional stock car races to ten organizations
11 including the Duke Children's Hospital and Health Center, the Make-a-Wish
12 Foundation, the American Red Cross, and the Susan G. Komen Breast Cancer
13 Foundation); *Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 827 F. Supp. 477,
14 480 (N.D. Ill. 1993) (awarding $2 million from an antitrust class action settlement to
15 fifteen applicants, including the San Jose Museum of Art, the American Jewish
16 Congress, a public television station, and the Roger Baldwin Foundation of the
17 American Civil Liberties Union of Illinois)). The court added:

18     When the selection of *cy pres* beneficiaries is not tethered to the nature of the
19     lawsuit and the interests of the silent class members, the selection process may
20     answer to the whims and self interests of the parties, their counsel, or the court.
21     Moreover, the specter of judges and outside entities dealing in the distribution
22     and solicitation of settlement money may create the appearance of impropriety.
23 *Id.* at 1039.
24       To avoid these pitfalls, the court returned to its decision in *Six (6) Mexican
25 Workers*, distilling a three-pronged test for determining whether a cy pres award is
26 appropriately tailored. The distribution should "(1) address the objectives of the
27 underlying statutes, (2) target the plaintiff class, [and] (3) provide reasonable certainty
28

1  that any member will be benefitted." *Id.* at 1040. The court also noted that the
2  American Law Institute has adopted a rule for cy pres awards requiring parties "'to
3  identify a recipient whose interests reasonably approximate those being pursued by
4  the class.'" *Id.* at 1040 n.2 (quoting PRINCIPLES OF THE LAW OF AGGREGATE
5  LITIGATION § 3.07(c) (Am. L. Inst. 2010)).

6        Applying the *Six (6) Mexican Workers* standard to the award it was reviewing,
7  the Ninth Circuit found in *Nachshin* that the selection of recipients fell short of
8  achieving the "next best" objective. The claims in that case were for breach of
9  electronic communications privacy, unjust enrichment, and breach of contract, among
10 others, relating to AOL's provision of commercial e-mail services. "Yet none of the *cy*
11 *pres* donations -- $25,000 each to the Legal Aid Foundation of Los Angeles, the Boys
12 and Girls Clubs of Santa Monica and Los Angeles, and the Federal Judicial Center
13 Foundation -- have anything to do with the objectives of the underlying statutes on
14 which Plaintiffs base their claims." *Id.* at 1040. The court found that the award failed
15 to target the plaintiff class because it favored local charities despite the national scope
16 of the class, and that it lacked any nexus to the underlying statutes. *Id.*

17       Here, Legal Counsel has made an effort to avoid the concerns raised by the
18 Ninth Circuit by taking appropriate steps, including two previous residual
19 distributions to provide settlement fund benefits to class members, thereby ensuring
20 that the vast majority of the settlement fund has been paid to class members and that
21 the amount remaining for distribution is much smaller than the million-dollar awards
22 criticized in *Nachshin*. Additionally, there will be no "solicitation of settlement
23 money" by contending organizations. The modest amount remaining here ($9,372 out
24 of a $150 million settlement) after diligent efforts to distribute the settlement fund to
25 class members have been made and exhausted insulates the awards from the abuses
26 noted by the Ninth Circuit. The Ninth Circuit's concerns and appropriate insistence on
27 the "next best use" cy pres principle can be further addressed by choosing one or more
28

1  non-profit organizations with missions consonant with a securities fraud claim. As an
2  example, the court in *In re Wells Fargo Securities Litigation* selected the Stanford
3  Law School Securities Class Action Clearinghouse, finding it to be a more appropriate
4  recipient than the one nominated by class counsel (the Bar Association of San
5  Francisco), because it provides pertinent information on pending securities class
6  actions free of charge to the public. 991 F. Supp. 1193, 1198 (N.D. Cal. 1998).

7  Should the Court decide to award the remaining funds cy pres, Lead Counsel
8  will, if requested, submit the names of nonprofit organizations having interests that
9  align with those of the Class for the Court to consider in selecting appropriate
10 recipients. We are submitting a proposed order for the Court's consideration but stand
11 ready to file a formal motion should the Court wish.

## IV. CONTINUING JURISDICTION OF COURT

We also ask the Court to retain exclusive jurisdiction to consider any further matters concerning administration of the settlement, including any further distribution of the Net Settlement Fund to Class members and the requested cy pres award, and to grant other relief that the Court may deem just and appropriate.

Respectfully submitted,

Dated: July 13, 2012

s/ *David Woodward*
David Woodward (Bar No. 68073)
*dwoodward@heinsmills.com*
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
Fax: (612) 338-4692

|   |   |
|---|---|
| 1 | Gretchen M. Nelson (Bar No. 112566) |
| 2 | *gnelson@kreindler.com* |
|   | KREINDLER & KREINDLER, LLP |
| 3 | 707 Wilshire Blvd., Suite 5070 |
| 4 | Los Angeles, CA 90017 |
|   | Telephone: (213) 622-6469 |
| 5 | Facsimile: (213) 622-6019 |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2012, I caused the following document:

- Fourth Quarterly Status Report and Recommendation for Cy Pres Award

to be electronically filed with the Court using the Court's ECF system which will send notification of such filing to all attorneys of record registered to receive notification of electronic filing.

s/ *David Woodward*
David Woodward (Bar No. 68073)
*dwoodward@heinsmills.com*
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
